Case No. 14-1032 at L. Children's Hospital and Research Center of Oakland, Inc., doing business as Children's Hospital of Oakland Petitioner v. National Labor Relations Board. Mr. Frankel for the petitioner. Mr. Heller for the respondent. Mr. Frankel, good morning. Good morning. May it please the Court, Matt Frankel on behalf of Children's Hospital and Research Center of Oakland, the petitioner in this matter. Children's Hospital requests that this Court vacate and deny enforcement of an order of the National Labor Relations Board which found Children's Hospital had committed unfair labor practice for declining to arbitrate with a decertified union, SEIU, despite the fact that a new union had been certified in its place, the National Union of Healthcare Workers, NUHW. Can I ask you a very basic question, a question about standing? What is the injury the hospital claims here? The injury that hospital claims is the requirement that it deal simultaneously with two different unions in violation of the Act. But has the Board ordered that? Yes, the Board has ordered it to proceed with arbitration with the SEIU. But I thought your argument was that if you proceeded to negotiate, to arbitrate with SEIU, you would be violating the Act. Is that not your argument? Our argument is... But the Board has said that that wouldn't be a violation of the Act. So do you see my problem here? Understood. The problem with the Board's order in this case is that the order itself violates the Act. The order requires Children's Hospital to deal with two unions at once in violation of Section 9A of the Act. The Act, Section 9A of the Act... But if the Board says they're not going to bring an unfair labor practice charge against you for doing this, how are you harmed? We're harmed because we will have to deal with the concerns and demands of two different unions at once, which the Act does not contemplate. The Act doesn't permit that. I thought the NUHW said that they didn't care. We don't think the record is clear on that, Your Honor. Towards the end of the joint statement of facts that's in the record, there are different and arguably inconsistent statements that came from the NUHW about whether or not they were okay with Children's Hospital arbitrating. But we don't think that that's relevant. A key point that I would make on that particular issue is that the Board's regulations, Section 102.9, this is not in the briefs, say that any person, quote, any person can file a ULP charge. So just because the NUHW, even if you accept that they don't have a problem with this, and I don't think the record is clear on that, an aggrieved employee could file a ULP charge. For example, if one of the arbitrations resulted in reinstatement that affected another employee's seniority, that employee could him or herself file a ULP charge against Children's Hospital. Specifically, what provision would you be violating? What provision of the Act? By arbitrating with SCIU? Yes. That's Section 9A of the Act. That's the language that says that the elected bargaining representative is the exclusive representative of the unit. And the Supreme Court has held very clearly, going way back to the earliest labor cases, that this exacts a negative duty on the employer to treat with no other union. So we're only allowed to deal with one union at a time. We cannot deal with a second union. And indeed, the board's order in this case is completely unprecedented. Never before had the board or any court anywhere in this country ever ordered an employer to arbitrate with a decertified union when that union had been replaced by a newly certified union. It's never happened before. This is the first such case. How about with just a decertified union, where there's no successor? We have no dispute that in those circumstances, the board's unfinished business rule would apply. Let me ask you this. I'm sorry. Were you satisfied? Can I give an obvious example? Yeah, go ahead. So which subsection of 8A would you be violating here, right? 9A. And it's Section 9A of the Act. Right. That's where exclusive bargaining is. That's where the word exclusive. Unfair labor practices come under 8A, right? So which provision of 8A? Well, the board has told us that they want us to arbitrate with the CIU, and so they would not pursue an unfair labor practice if we were to do that. It's 8A-5, isn't it? Isn't that what your argument has to be, to refuse to bargain collectively with the representatives of the employees? Yes, I think that's probably correct. And have you refused to bargain with the NUHW? Well, I think that the cases that we rely on, the Federal cases that have actually dealt with this issue before hold that it is tantamount to an unfair labor practice to arbitrate with a union that is not the majority union, to arbitrate with a minority union. Wait a minute. With a union that's not a majority union in a situation where there's a replacement union? Yes. That's what the three Federal cases that have addressed this issue have held. And that's the McGuire case. That's the second certain case of 1966. Am I right, though? Look, in McGuire, the employer there was not a signatory to the collective bargaining agreement, was he? That's correct. It was a successor employer. Right. So that's not this case. This employer is a party to the collective bargaining agreement. To the prior collective bargaining agreement. That's correct. So can you point to any case like this one other than the only one I know of that raises the precise issue we have. Actually, it's not even the precise issue, but at least it's the same facts. It's Bailey-Seaton, where you have a replaced union. Correct? Well, in our view, McGuire is distinguishable on that fact. But the court's holding in that case is very clear, that arbitration is tantamount to collective bargaining. You cannot arbitrate with the minority union when there is a majority union that is certified to represent the bargaining agreement. Let me take you back to instead of talking to us about all these cases, your position is that it's a 9A issue, right? Correct. Okay. So how about starting, so is your theory that the board is violating the plain language? This is a Chevron question, right? Do we apply Chevron to this? Chevron only goes so far. If the board issues an order that embodies a rule that violates the National Labor Relations Act, that rule cannot stand. Well, doesn't that depend on whether it violates the act or not? I'm sorry? Of course you're right about that. But when we look at a statutory question like this, including with respect to the NLRA, aren't we guided by Chevron? Don't we first have to ask whether the statute's clear? And if it isn't, then we defer to the board's reasonable interpretation statute, right? Sure. Is that the right? That's correct. Okay. I'm asking because I didn't see any of that in either your brief or the board's. So let's start with 9A. Is it your position that 9A is unambiguous? It's our position that 9A is unambiguous insofar as it calls for one exclusive bargaining representative, and the Supreme Court has held that that means very clearly that the employer cannot deal with a second union, a minority union, a union that is not a certified bargaining representative. And so what about the ALJ's response to that, which is the ALJ says that this is not a problem because two of these are back-piggy questions and the other is a reinstatement, and it's really only a question of the board, of the union and the employer kind of cleaning up old business. I understand the issue. That's what the ALJ says. We disagree completely with that notion. I know you do. The reason the ALJ is incorrect is because the — Under the statute. Give me the answer under 9A. Why is that not a perfectly reasonable — I'm not saying it is. I'm asking you why it's not a reasonable interpretation of 9A. It's our understanding that 9A prevents one union essentially from — a union that's not the majority certified union from getting its hand in the game and trying to influence the employer's relationship with the actual certified union. Here, the old contract is identical in material respect to the new contract, the contract with the NUHW, and any arbitration with the SCIU, in which only the SCIU and Children's Hospital and the grievance would be parties, would involve interpretation and application of contract terms under the old contract that are identical to contract terms under the new contract. We think that there's ample basis in the law, whether it's arbitral precedent or collateral estoppel, for a ruling in any punitive arbitration with SCIU to have a direct effect, at least a persuasive effect, but even perhaps, depending on which arbitration decisions you read, a controlling effect on the interpretation and application of the new contract with NUHW. I was asking about 9A. So 9A says it shall be the exclusive representative of all employees. Okay. For the purposes of collective bargaining. Okay. Now, the board says in its brief that this isn't collective bargaining. It's just arbitration of a grievance. It's our position that arbitration is part and parcel of collective bargaining. That's made clear by McGuire. It's made clear by the Unite Here case, which is a Southern District of New York case that was published in 2010 on this issue, and it certainly was the decision of the Northern District of California when Judge Ilston ruled on this precise dispute several months before the NLRB. Judge who? Judge Ilston in the Northern District of California. Well, come on. That's not binding here. That's a district judge in California. Understood. But these are the three cases that had been decided on this issue prior to the board. And then it goes on and says, in respect to rates of pay, wages, hours of employment. Now, ALJ says that on the facts of this case, at least with respect to the two back pay awards, there's nothing that requires the employer to negotiate any term or condition of employment with respect to the new or old contract, just the new contract. It's just a question of whether the two employees are entitled to back pay under the old contract. In order to determine that, you have to interpret and apply a contract. Again, the language is the same in the new contract, and our concern is that SEIU and the grievance respect. Well, but then if that was right, then, you know, you could never have arbitration because it would always be the risk that an arbitral award would affect a future contract that wasn't involved in this. I think your argument proves too much on that. But in that respect, the union that is currently certified would be able to present its position and make its arguments and decide how it believes the contract ought to be interpreted. Here you would have another union, an old union that no longer is. So taking it back to my statutory question here, my basic question to you, do I understand your position then, looking at this through the Chevron context, is that the board has violated the plain language of Section 9A, right? That the board's order violates Section 9A as interpreted by the Supreme Court, yes. As interpreted by the Supreme Court. You mean that it shall not deal with anybody else? That's right, the negative duty that 9A implies is correct. Is it your position that the NUHW could arbitrate these grievances? The board has held that the NUHW cannot arbitrate these grievances. So these particular employees, under your theory, are conveniently for the company out of luck? Absolutely not. It's our position that these employees could file Section 301 suits, alleging that the employer violated the collective bargaining agreement by not paying them the wages they say they are owed, and that these suits could be filed now or in another case as soon as the- But they're not arbitration proceedings, right? These are lawsuits brought- They cannot be pursued in arbitration proceeding with SEIU. And the board has held- And they can't be pursued with NUHW. So arbitration is out of luck. The benefit that was conferred upon them, the benefit that they negotiated through their union representatives to have access to arbitration, under your theory, it's gone. They can bring a federal lawsuit. In the limited circumstances- That's something different, though, right? A federal lawsuit is something much different than an arbitration proceeding. It's different, certainly. In the limited circumstances in which a union is voted out during the pendency of a grievance, there's a lot of upheaval, as we mentioned in our brief. A lot of things happen when that occurs. And there are numerous cases holding that this union that's been voted out is completely out of the picture, has no representative rights whatsoever. And so in that circumstance, in the limited circumstances where you have a union that's voted out and replaced, that there are pending grievances, those few grievances, if the board holds, as it does, that the new employer cannot pursue those grievances, then the remedy is for the employee at that time to seek recovery in federal court. Your argument depends on us being of the view that grieving and arbitration is part of collective bargaining, right? That's right. Arbitration is part and parcel of collective bargaining. We think the cases are pretty clear on this, McGuire in particular. And if arbitration is part and parcel of collective bargaining, the hospital is prevented from engaging in arbitration slash collective bargaining with the minority. I'm just curious, why didn't you argue this as a Chevron case? I think that puzzled all of us. Well, because we think that the order is directly in violation of Section 9A. That's Chevron. Well, I don't think it's an issue in which the board's discretion even comes into play because the issue is. Well, but you see, you have to explain that in your brief. I mean, that's what Judge Griffith is asking you. I mean, to make a Chevron argument, a Chevron 1 argument, you have to first argue that the statute's unambiguous. And, I mean, you didn't even cite Chevron in your brief. Here's the way I see the Chevron question. And tell me if you think it's – tell me why you think it's wrong because I assume you will think it's wrong. So, you know, what we always – the standard question we ask under Chevron, the court told us to ask is, has Congress spoken to the issue before us, right? Right. That's the question. All right. So when I look at 9A and the facts of this case, I say to myself, the question here is how does 9A apply in a transition situation like the one we face, where you have a decertified union and a replacement union and an employer who's party to the old agreement? That's the question to me. And I don't see where 9A answers that issue. 9A speaks to the normal situation that all the other cases have talked about, where you have a decertified union and no replacement union, or where you have an employer negotiating with the new union, which you can't do. But I don't see anything in the statute that tells us what to do in this unique transition situation. And so when I see that, I say, okay, what we need to do is give the board a chance. The board hasn't done this either. I'll ask counsel about it when he steps up here. The question to me is how does the board applying its expertise in labor law explain how this statutory language applies in this situation? To me, that's the question. We think 9A answers the question and the Supreme Court's decision. Okay. Tell me why. Why does it answer that question? Because it requires an exclusive relationship. And this would be a non-exclusive relationship. So that's your answer. Okay. I got it. Well, if you were to use Chevron and allow that this might be a gap-filling that the board did, the gap-filling still cannot be manifestly contrary to the statute. Absolutely. That's certainly our argument in this case. And in terms of this, I don't think this is a gap-filling. Again, this order is unprecedented. There were three federal court decisions dealing with this issue or a very similar issue. All went in the direction of the hospital, saying that an employer could not arbitrate with a decertified or replaced union. And the final point I make, and I know I'm way over, I've answered a lot of questions. In this case, it would be totally unfair for Children's Hospital to be a judge to have committed a ULP. When the old union requested arbitration, we actually filed a suit in federal court to get a judicial declaration saying that we didn't have to arbitrate. And that case was fully briefed and argued, and the court in the Northern District of California held that we did not have a duty to arbitrate. Many months later, not happy with that result, the SCIU, along with the NLRB, pursued the ULP. And many months later, the NLRB held that we did, in fact, have a duty to arbitrate. So it was a complete upending of existing federal law. It was an issue of first impression before the board. And applying that to Children's Hospital under the facts of this case, where Children's Hospital went out of its way to try to get a judicial answer to this question, and got the answer that told it it didn't have to arbitrate. Now for the board to hold it liable for ULP and to say that it has to go back and arbitrate with SCIU would be unfair. And we don't think that this rule, even if it could be justified in the abstract as a reasonable policy imposed by the board, should not be applied to Children's Hospital here and force it to go through the ULP process, posting notice and all that stuff. All right. All right. We have your argument. Thank you. We'll give you a minute to reply. Thank you. Mr. Heller. Good morning. My name is Joel Heller. I represent the National Labor Relations Board. The board's finding that the hospital unlawfully refused to arbitrate three grievances is supported by substantial evidence and was based on the application of established legal principles. How about starting with the statute? Sure. There's been a lot of talk about Section 9A of the statute. There's what? There's been a lot of talk about Section 9A. Not in your brief or not in the board's decision. I meant today. There's been a lot of discussion. Okay. Section 9A, as you mentioned, discusses that for the purposes of... Let me just focus this. Do you agree this is a 9A case? The employer's arguing that it would violate 9A if it was required to arbitrate with a decertified union, right? That is the employer's position, yes. So it's a 9A issue we have. Well, we disagree with the idea that the employer's obligation under 9A not to engage in collective bargaining with a minority union is inconsistent with the board's finding in this case that the employer violated 8A-5 by failing to arbitrate grievances with the decertified union. Section 9A talks about collective bargaining for the purposes of collective bargaining with respect to rates of pay, wages, hours of employment, and conditions of employment. That is not the situation here. This case is about... Why is that? Because this case is about arbitration. It is not about collective bargaining. Well, that... I didn't see that analysis in the ALJ's decision at all. Is that in there? I mean, I know you argued that in your brief, but where... What the ALJ says... That's a decision we're reviewing. What the ALJ says is that the rationale of the ALJ... I see two possible rationales in the ALJ, and that's what we're reviewing, the ALJ decision. One is, he says, given Arizona-Portland, which means Children's Hospital can't negotiate with the new union, it must bargain with the old union or else, citing Bailey-Seaton, the grievance will die, right? Yes. That's one argument. Yes. Okay. Then later in the decision, the ALJ says, there's not a 9A problem here on the facts of this case because this is just a question of cleaning up old business, right? Yes. Okay. So if this is... If the employer's position is that requiring it to negotiate, to arbitrate here would require it to violate 9A, it seems to me... And that's the issue before the ALJ. The ALJ has to explain why that is in view of the language of 9A, and I don't see that in his decision or in the board's affirmance. What I don't see here is the board... I mean, I assume you think the statute's ambiguous, right? The statute... Section 9A does not address this situation. No. Okay. So what I look for, what courts look for in a situation like that is, where has the board exercised its authority to interpret the statute? And show me in the ALJ decision where you think that's happened. The complaint in this case was that the employer... No, no, no. Show me in the... Don't cite the complaint. Don't cite any other decisions. Just get... Do you have the ALJ decision there in front of you? Yes, I do. Okay. Why don't you tell me where... Why don't you tell me where in there it does it? Okay? The allegation is that the employer violated Section 8A-5 of the Act. So that is what the administrative law judge was discussing. Their defense, the employer's defense, was that the board's finding in this case was somehow inconsistent with a different part of the statute. But the ALJ pointed out, and the board adopted this part of the ALJ's decision, that it's already been established that an employer has an obligation... But the entire 8A-5 discussion, which he calls his starting point, is all about situations where there's no replacement union. And those are the cases he cites. Right. He cites cases where there's no replacement union. Right, and that is... That's his starting point. Yes. If that doesn't... Don't you agree that doesn't answer the 9A issue? Correct? He obviously... The employer has an obligation to bargain with the old union. But the employer says here, but wait a minute, there's a replacement union and there's 9A. So the starting point paragraph doesn't help us. Okay, it's the next argument. See where he goes on and rejects the arguments? Yes. Okay. Okay. All right. All right. And so it says, the employer says he can only negotiate with the new union. Right? And he says, but this has been rejected by the board, and he cites... Missouri-Portland. Missouri-Portland. Well, Missouri-Portland didn't involve a replacement union, right? No, but it set down the principle. But you see my point? The principle is uncontested here. Right. That is, an employer has to negotiate with the prior union. Arbitrate. I mean arbitrate. Thank you. But the question here is, doesn't that change in view of 9A because there's a replacement union? The only place, the only... And then he says, if it processes the agreement of the prior agreement, it may be charged with an 8A2. But doesn't he mean 9A1 there? The section, as you mentioned before, Section 8 of the Act contains unfair labor practices. But that's because of 9A1. And then he says, okay, here's where he's really getting at 9A1. He says, but this fear is unfounded, at least on the facts of this case, right? Right. Okay, this is where he engages the issue the employer's making, correct? Right. And essentially what the ALJ is saying is that 9A is not implicated in this case because there is not... Sorry? He says it, but he doesn't say why under the language of 9A isn't. He just says it. He doesn't cite the language of 9A. No. So I don't see any... Do you know of any cases where we've accepted this kind of analysis as an exercise of board authority to interpret the statute under Chevron 2? Well, we are... It's the Court's position that this is a... This case involves the application of a settled principle to the facts of this case. What's the settled principle? The settled principle is that an employer has an obligation to arbitrate pending grievances if they arise under a contract providing for arbitration, even if the union seeking arbitration is no longer the bargaining representative of its employees. Is there a case that holds that's the case in a situation where there's a replacement union? No. No, that is a factual difference between... That is a what? A factual difference between this case and previous cases. Not in your mind a significant factual distinction? But not one that leads to a different result or a different conclusion. And what about 9A? 9A likewise doesn't... Sorry, doesn't lead to a different result. 9A requires that an employer bargain, engage in collective bargaining, with the majority representative of its employees. Couldn't we... Let me just finish this one question. Just finish that sentence. And this is not bargaining, it's arbitration, right? This is not bargaining, it's arbitration. Where is that in the ALJ decision? Well, it's inherent in the ALJ's decision because it's discussing arbitration. Does he say, does the ALJ say that this is not a problem under 9A's exclusivity requirement regarding collective bargaining because this is arbitration? Well, what the ALJ is saying is that... Where does he say that? The ALJ says that nothing needs spillover into determining current conditions of employment for the unit employees because these are backward-looking arbitrations. It's not... They're not negotiating a collective bargaining agreement. They're not setting terms and conditions of employment going forward. Aren't there lots of court cases that say, and indeed board cases that say, that arbitration is part and parcel of the collective bargaining process? There's general language to that effect, but in cases, board and court cases in which the issue is, does the employer have an obligation to arbitrate with a decertified union or a union that otherwise no longer represents the employees, those cases differentiate between arbitration and bargaining. Are you suggesting that there would be a meaningful difference here if the arbitration in this case were over prospective employment conditions as opposed to reinstatement and back pay? Would that make a difference? Yes, I think that would make a difference, and that is how this case is distinguishable from McGuire, the second circuit case. Isn't that exactly what the reinstatement arbitration is? If the person is successful, that person will be reinstated, and the employer says in its brief that that will affect seniority, rights of current employees, which is something only the new union can negotiate about. I didn't receive a response to that in your brief. If the employee was reinstated, she would certainly be present in the workforce, but that would not interfere with the bargaining relationship between the hospital and the new union. Children's Hospital says it would affect existing seniority rights of other employees. Yes, but that doesn't go to their ability to set terms and conditions of employment going forward, which is their complaint in this case, is that the board's decision would interfere with the bargaining relationship between the employer and the new union. So tell me in the crispest form you can, the basis on which we can grant the board's enforcement petition. State for me as clearly as you can, based on the ALJ's decision, what the theory is of affirming the board here. What is it? The theory for affirming the board's decision is that the board explained that these are, that what the SEIU is seeking to do to arbitrate these grievances is, would have no effect going forward on the bargaining relationship between the hospital and the new union. And moreover, it is the fair result for the employees in this case, given Arizona Portland, and the fact that the new union would not be able to compel the hospital to arbitrate these grievances. In that crisp answer, you didn't even mention 9A. Right. Again, I think the 9A issue is kind of subsumed within this idea that what the SEIU is seeking to do is, is arbitration is looking to the past, is completing unfinished business, rather than bargaining, engaging in collective bargaining with the union, which is what 9A prohibits it from doing with the minority union and forces it to do with the majority union. I think it's the same issue there. Okay. Yes. Let me ask you this. You're relying on 8A-5. 8A-5 itself says it's a ULP for an employer to refuse to bargain collectively with the representative's employees, subject to the provisions of Section 159A, which is 9A. I mean, there's no other way to read that than to say it's an unfair labor practice to refuse to bargain collectively with representatives, which must be the exclusive representative of the employees, which is not the case here. I mean, you keep saying 9A is out there somewhere, and they've relied on it as a defense. It is right in 8A-5 itself that what 8A-5 guarantees is subject to the provisions of 9A, which means it's got to be the exclusive representative. Right. The reason why the refusal to arbitrate is an 8A-5 violation is … But did they refuse to arbitrate with NUHW? The NUHW never requested arbitration, and the employer, Andre Arizona Portland, certainly could have refused, even if NUHW had requested. So they refused to arbitrate with SEIU, who was not the exclusive bargaining representative at the time? At the time, they were not. But at the time, getting back to Judge Henderson's question, the reason why this is an 8A-5 violation is because the obligation to arbitrate comes out of the contract negotiated between the SEIU and the hospital. And by repudiating their contractual obligation under that contract, under the contract with the SEIU, they have refused, they have violated 8A-5. I thought you said that arbitration is not collective bargaining. Yeah. Isn't that your position? So how could they violate 8A-5 if arbitration is not collective bargaining? The duty to arbitrate is contractual in nature. It comes out of a contract. So the reason why this is an 8A-5 is because the act of arbitration, the process of arbitration, the act of arbitration would not be the same as collective bargaining. But their obligation to engage in arbitration comes out of a contract, which was negotiated with the SEIU at the time that it was the exclusive bargaining representative of the hospital's employees. And so that is why it's an 8A-5 violation. Any more questions? No. All right. Thank you. Does Mr. Frankl have any time left? Okay. Thank you. I'll begin with the point that the board's unfinished business rule is an exception to the general rule that when a union is decertified, the collective bargaining agreement is dead. And that union no longer has any representative function going forward at all. So the unfinished business rule is an exception to that general rule that is very well established that says, well, in the limited circumstances when there is no successor union, the employer must tie up loose ends with the existing union. I'd like to get your response to Judge Tatel's line of questions to your opponent about whether the ALJ engaged with 9A here in a way that we can view. Don't we have a Chenery problem here? We don't think the ALJ engaged with 9A at all. And we thought it was puzzling that the ALJ didn't address the federal court decision that had been issued in this precise case previously. I mean, he mentioned that it had occurred, but he didn't actually grapple with the 9A principles that were elucidated. Do you think there's a Chenery problem here? I'm sorry? Do you think there's a Chenery problem here? Well, I think that there very well may be. I mean, to the extent that the board, the ALJ slash the board, did not actually explain how 9A could be avoided or the problem of 9A could be dealt with here, didn't even address the fact that this was an exclusive bargaining problem, I think that you do have that concern. So the only other point that I would make is that there is no problem here with the remedy in the sense that simply not being able to arbitrate these claims, that's a very small price to pay for the choice of the majority of the union members to reject the union. I mean, their substantive rights under that contract still exist, and if they think that they were not paid correctly pursuant to that contract, if they think that they have a reinstatement right, they can pursue those rights. This is not telling these employees that they are out of luck. Could have got that argument. Thank you.
judges: Henderson, Tatel, Griffith